# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBOCAST, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action No. 11-235 (RGA) |
| | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| APPLE, INC., | ) | |
| | ) | |
|     Defendant. | ) | |

**************************************************

| | | |
|---|---|---|
| ROBOCAST, INC., | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action No. 10-1055 (RGA) |
| | ) | |
| | ) | |
|     v. | ) | |
| | ) | |
| MICROSOFT CORPORATION, | ) | |
| | ) | |
|     Defendant. | ) | |

## SPECIAL MASTER OPINION AND ORDER

Paul M. Lukoff (Del. Bar #96)
Wilks Lukoff & Bracegirdle, LLC
1300 Grant Avenue
Suite 100
Wilmington, DE 19806
(302) 225-0850

Dated:  July 30, 2013

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBOCAST, INC.,          )
       Plaintiff,       )
                      )     Civil Action No. 11-235 (RGA)
                      )
                      )
       v.             )
                      )
APPLE, INC.,           )
                      )
       Defendant.     )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ROBOCAST, INC.,          )
       Plaintiff,       )
                      )     Civil Action No. 10-1055 (RGA)
                      )
                      )
       v.             )
                      )
MICROSOFT CORPORATION,  )
                      )
       Defendant.     )

## SPECIAL MASTER'S OPINION AND ORDER

Having recently filed an Opinion and Order[1] relating to the plaintiff's Privilege Log and specifically to whether the presence of third-party consultants and independent contractors compromised otherwise privileged communications, this Opinion and Order is devoted to two additional issues, as well as a continuation of the first:

1. Do any "Pozner-related" documents continue to deserve the protection of the attorney-client privilege?

---

[1] D.I. 249, dated July 19, 2013.

2. Are there additional documents on Robocast's 15,000 item Privilege Log, beyond the more than 1,500 already scrutinized, where privilege is lost due to plaintiff's failure to adequately describe them?

3. Does the presence of third party consultants who receive or participate in otherwise protected communications waive the privilege?

In connection with the first question, as I mentioned in my July 19 Opinion and Order, Judge Andrews previously held that the attorney-client privilege did not protect communications between Michael Pozner, a Canadian lawyer previously functioning as Robocast's Director of Business Development, and his employer. *Robocast, Inc. v. Apple, Inc.*, C.A. No. 11-235-RJA (D. Del. April 17, 2013)[ORDER]. Yet, the plaintiff subsequently only produced some, but not all, Pozner-related documents[2]. Apple asserts that that deficiency should be remedied now, disputing that any justification remains for further withholding of those documents. Robocast counters that Pozner was involved in communications between Robocast employees and its lawyers, the context not simply being a two-way communication. Plaintiff contends that, if Pozner was not acting as an attorney, his status as a high-level employee to whom or through whom a legal advice-related communication had been distributed preserves the privilege[3].

Therefore, the threshold question with respect to these documents is whether Judge Andrews' April 17, 2013 Order trumps any assertions that the former Director of Business Development could still function as a conduit or adjunct to lawyers? The briefing that the Court

---

[2] According to the defendant, there were originally about 2,000 such documents, but approximately 1,500 were produced by Robocast after the Court's April 17 Order. Less than 500 remain at-issue.

[3] No matter how Robocast frames the issue, I have already delineated in my July 19, 2013 Opinion and Order the necessary predicate to establishing that a third-party's presence on a communication with counsel does not waive the privilege. I adopt that legal standard now as if specifically set forth herein.

considered when it ruled on the issue was in letter memorandum form.  Robocast's letter to the Court describes that a number of Pozner-related documents had actually been voluntarily produced when the document showed that Pozner had "acted in his business development capacity."  But, that begs the question as to why those particular documents were produced yet others where Pozner was supposedly functioning in a non-legal capacity were not?  It does not appear that the parties submitted to the Court the precise issue that is now being confronted.  The Court's Order only refers to a dispute over "whether Robocast must produce its communications with a Canadian attorney, formerly under its employ."  Implicit in that recitation of the issue for decision is that it related only to Pozner-to-Robocast and reciprocal communications[4].  Robocast advises that, if it could not explicitly confirm that the creator or recipient of a Pozner-related communication was an attorney, it has produced the communication.

The plaintiff has drawn a line in the sand with respect to documents where Pozner, although acting in a business capacity, nevertheless was a participant or conduit in the solicitation and rendering of legal advice from counsel.  The resolution of this issue could have required balancing on a very fine wire where, on the one hand, Pozner's unofficial title of "General Counsel" is meaningless but, on the other hand, he is touted as deeply involved in obtaining and the consideration of legal advice from lawyers.

I have determined that, for most of the communications with lawyers I've reviewed, Michael Pozner was functioning in his "Director of Business Development" role and in that

---

[4] Indeed, in Apple's April 30, 2013 submission to me, it asked that I order the plaintiff "to produce immediately all missing data for all documents in its privilege log that do not rely upon Mr. Pozner as the sole attorney on the communication."  From context, I interpret the "missing data" being sought as additional information for each entry on the privilege log which, according to the defendant, had been conspicuously absent from earlier iterations of the log, data that Apple believed had been ordered by Judge Andrews to be produced by Robocast by April 11,

capacity was actively engaged in securing, and integral to the consideration by Robocast of, legal advice. Indeed, the fact that he was a lawyer in another jurisdiction obviously enhanced the perception of what he could bring to the process. On the other hand, to the extent that Pozner communicated with others at Robocast without outside counsel being party to the communication, there was greater opportunity to find that his involvement, having already lost any patina of protection in terms of attorney-client privilege, was for business rather than legal reasons.

Regarding the second question, I have already described at length the relationship of FRCP 26(b)(5)(A) to the privilege log[5]. Thus, I have reviewed the cited entries on the Privilege Log in light of the standard I described in my previous Opinion. My determination concerning compliance with Rule 26(b)(5)(A) [or lack thereof] is set forth on the accompanying decision chart.

I have no reason to doubt plaintiff's counsels' representation, as officers of the Court, that they've described as well as they can documents which they're certain came from an outside law firm, but whose metadata (or other non-textual information on the documents) provided no further insights as to which firm and which attorney within that firm was the originator of the document[6]. For that reason, unless context somehow suggests a different result, my acceptance of the representation has resulted in the description passing muster under Rule 26(b)(5)[7].

---

2013 (4 weeks after the discovery dispute hearing in which the Court first dealt with the Pozner issue) and which data Apple contends would then allow it to determine whether to further contest claims of privilege.

[5] See the discussion at pp. 3 and 4 of my Opinion and Order of July 19, 2013, which discussion is incorporated herein as if specifically set forth in this current document.

[6] The problem with that characterization, however, is that some of the documents make it fairly clear which law firm, if not which attorney in that firm, was the source of the attachment for which privilege is claimed. If the plaintiff had done a better job of posting the known information on its Privilege Log, however modest, perhaps the

4

Included in the now-reviewed approximately 1,100 additional log entries and documents are a number of items where third party consultants or independent contractors are recipients or participants or there are names that were not included on the July 19, 2013 decision chart. My understanding is that they are all "third parties" in the same sense as that term was used in my last Opinion and Order. Too, my knowledge of the relative functioning of any previously unidentified individuals *vis-a-vis* legal advice is quite limited (except as noted below) and, accordingly, the effort to account for their presence on the Log correspondingly difficult[8].

I did review a number of documents with the name "Jeff Zilahy" on them, a name I had not seen in connection with my previous Privilege Log evaluation. Mr. Zilahy's activities have been characterized by Robocast as "due diligence investigation" but, except for a few communications with Robocast's in-house lawyer, Mr. Smith, all of his communications were with Mr. Torres and no attorneys were involved. Those with Mr. Smith had information in the body of the communication that made it clear that Mr. Zilahy's efforts were ultimately connected to a patent-related project for outside counsel. There was no basis in the body of any of the other communications from which to infer a similar effort for Mr. Torres.

---

defendants would not have challenged those descriptions as inadequate. Although I have the authority to assess plaintiff with a higher portion of my compensation for potentially unnecessary Privilege Log-related work, I won't do that since there were not enough such documents and we essentially have a "set-off", too. See footnote 14.

[7] My evaluation of the documents, in fact, reinforces the proposition, applicable to the great majority of these insufficiently-described documents, that they were prepared by counsel and sent to Robocast in draft for review, comments, discussion, etc.

[8] One such individual, "Tom Foley", had a running dialogue with Robocast (reflected in more than a few documents), in his continuing effort to persuade the latter that the email address being used was consequently delivering documents meant for outside counsel to him ["tfoley"] instead. Given the obvious inadvertent dissemination to Mr. Foley instead of to "Foley", those documents are not losing their privilege unless there's an independent reason to do so.

I also saw documents sent to a "Campbell Wilson", someone not identified on the long Robocast Attorney List which I've been provided. Wilson's email address indicates he or she worked at NYU[9]. Other documents reviewed refer to Wilson as a potential lender, explicitly confirming third-party status insofar as my assessment is concerned. That Wilson eventually may have become an "official" Robocast consultant and was provided with a Robocast email address did not change my assessment.

There was one group of documents I was asked to review, probably less than 70, which were labeled by the litigants as "attachments." That is, I was asked to determine if these documents independently were privileged, frequently without taking their transmittal emails[10] into account. That question, unfortunately, raises another, anomalous question: why were these singled out for separate review?[11] It doesn't make sense to isolate only the attachments, especially when, e.g., some of the transmittal emails are not privileged. Consequently, in order to be consistent with the approach I was constrained to take in connection with the July 19, 2013 Opinion and Order, the approach I've taken now is to review the entire document (including both transmittal email and attachment) and decide privilege accordingly.

---

[9] Another individual with a NYU email address, "Lydia Andre", also appears on a few documents and, like Wilson, waives the privilege.

[10] Those emails were viewable, but some were not on the list of documents to review on the Privilege Log.

[11] What is the privilege status of the many "attachments" to emails in the first set of approximately 1,500 documents that were the subject of my July 19 Opinion and Order, and regarding a few of the attachments here? Without having those documents available, I couldn't then and can't now address their independent privilege status. Those "attachments" were actually single pieces of paper with notations that the documents that were supposedly attached weren't there; that they had not been produced since they were "Unsupported or Excluded File Type."

Attached at A is a Key Word and Abbreviation list similar to but more extensive than the one that was published with my July 19 Opinion and Order[12].  Attached at B is a new decision chart that reflects my item-by-item determinations[13] of the answers to the questions posed at the outset of this Opinion and Order[14].

Once again, with the plaintiff's relatively unencumbered ability to facilitate a delivery to the defendants of those documents on its Privilege Log that I have found to not be privileged, Robocast shall produce copies of such documents no later than August 5, 2013.

IT IS SO ORDERED.

Paul M. Lukoff
Special Master

Dated: July 30, 2013

---

[12] I notice that Mark Quinn's name was misspelled on attachment A to the earlier Privilege Log Opinion and Order. That error has been corrected on attachment A to this document.

[13] Many documents are cited by Robocast as deserving protection for not only attorney-client privilege purposes, but work-product privilege as well.  Since many of the work product claims were associated with documents created at least 2-3 years before the current litigation was filed, it begs the question of timing.  However, because attorney-client privilege still attaches in almost all cases, the work product claim wasn't addressed except twice.

[14] There are a number of documents reflecting communications between Robocast and its lawyer(s), but on which no third-party consultants are identified.  I'm not sure why they were cited by the defendant as justifying my review, but I only found one of them to have lost any privilege.  For the reasons I discussed in footnote 6 above, I will not impose a higher portion of Special Master compensation with respect to this probably unnecessary review.