IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBOCAST INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 10-1055-RGA |
| | : | |
| MICROSOFT CORPORATION, | : | |
| | : | |
| Defendant. | : | |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | : | |
| ROBOCAST INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 11-235-RGA |
| | : | |
| APPLE INC., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM ORDER**

Before the Court are objections to the Special Master's Opinion and Order. (D.I. 252).[1] I review the matter *de novo*.

The Special Master has reviewed at least two thousand documents making privilege

---

[1] Docket Items follow the numbering in the Apple case.

determinations.[2] I have reviewed each of the 26 disputed documents, many of which are one page long. Although there are 26 disputed items, the number is substantially less in a conceptual sense, since there is a lot of repetition. For example, items 14, 43, 2397, and 2410 are essentially the same thing, and 2361, 2790, and 2794 are essentially the same thing.

There is also a declaration from Damon Torres. (D.I. 261). The declaration was not before the Special Master. Defendants object, essentially arguing that it is too late to make up for a failure of proof before the Special Master. I would like to agree with Defendants on this, but I am constrained by Rule 53(f)(1), which states that I "may receive evidence" in connection with any action I take in regard to a special master's report. The parties have not briefed the significance of the "may receive evidence" phrase, but given the *de novo* review,[3] I think I should allow the further evidence. The privilege determinations are important. Defendants argue that I then have to do extra work, and that this should be avoided. While I agree that unnecessary work should be avoided, given my understanding that the Special Master's privilege determinations are 99.8% unchallenged, I do not think Robocast's actions come close to indicating some sort of abuse of the process. The only question I have is whether I should return the determinations that are affected by the extra declaration back to the Special Master, and I think the answer is that in these particular circumstances, I should make the decisions. While the Special Master has a better understanding of the discovery issues than I do, I think the trade-off between efficiency and delay caused by a "remand" favors resolution of the issues by me now.

---

[2] (D.I. 252, p. 2 ("1,500 already scrutinized"), p. 5 ("1,100 additional log entries and documents")).

[3] The Magistrate Judge rule (Fed. R. Civ. P. 72(a)) provides for "clearly erroneous" factual review, and does not provide for taking further evidence on nondispositive matters. I think the contrast in standards of review is instructive.

Considering the objections in the same order in which they were presented, I make the following rulings.

The "Pozner documents." I think 1339 & 1340 are privileged. They are privileged communications from a lawyer, sent to Pozner, which Pozner forwarded to Torres.

I do not think 255 has been shown to be privileged. It is not self-evident from the document that it is privileged, and there is no other argued basis as to why it should be considered privileged.

In regards to the other seven Pozner documents, I have considered the attorney-client privileged document located at D.I. 263, Exh. E, which is a letter dated July 14, 1999. The privileged letter clearly establishes an important date (last paragraph of page 2). I accept that Pozner knows the date is important because that's what he's been told by the lawyers. I do not think, however, that any of the seven disputed documents (14, 43, 2361, 2397, 2410, 2790, and 2794) is a communication of legal advice through Pozner, or is an effort to gather information to obtain further legal advice, or "specifically relate" to the legal advice. The following is an analogy. If a lawyer told a client that a tax return was due in a month, and would have to be supported by invoices and receipts for the claimed deductions, interoffice communications stating, "collect all relevant invoices and receipts for the tax return by the due date" would not be privileged.

The "Stipkala documents." There are thirteen documents that involve communications back and forth with lawyers, which would pretty obviously be privileged if they were just between Mr. Torres and the lawyers. They are not, however. The emails copy Michael Stipkala at his "hotmail.com" address. The record for determining why Mr. Stipkala is being copied on these emails is sparse.

Stipkala, Lynn Battaglia, Torres and two lawyers met, in connection with a document, on or about January 3, 2007. (3973). Why Stipkala was at the meeting is not revealed in the email about that meeting. The subsequent document (3976) gives more of a hint. It is an email from Torres to lawyers providing draft legal documents. Buried within it is an email from Stipkala to Torres providing the documents. I cannot tell if Stipkala wrote or edited them, or was just retrieving them from somewhere. The other eleven documents offer no intrinsic clues at all as to why Stipkala was copied on them.

There is some extrinsic evidence. About February 1, 2007, Stipkala was being represented by Interactive Media Universe LLC as a "Document Manager" who "has served as a document manager with a large law firm on a major case and brings some of that expertise to what he does at IMU. He also has been publishing on the blog and web site, pursuing grants on behalf of the company and helps maintain connections to the interested parties with document flow." (D.I. 348, Exh. A, at 4). During Mr. Torres' deposition, he identified Stipkala as, in November 2006, being a person who "was working on the Robocast project with me." (D.I. 348, Exh. C, at 5). Mr. Torres elaborated: "[O]ne of the reasons I was working with Michael Stipkala is because he had experience at a law firm. And that I considered Mr. Stipkala as part of my privilege circle, since he had experience working at a law firm." (*Id.*). That's it.[4]

The Special Master stated, based on this record, that it "[was] difficult to envision [Stipkala], a 'document manager,' as such having much of role with respect to legal issues." ((D.I. 249, at 11). In its briefing, Robocast likens Stipkala to an assistant who gets privileged documents and files them. (D.I. 260, pp.7-8). Robocast states, correctly I think, that to say that

---

[4] There is a reference to an affidavit of Damon Torres (D.I. 348, Exh. B, at 3), but no affidavit was provided.

disclosure to such an assistant destroys the privilege would be absurd. The problem with Robocast's argument is that Torres does not describe him as an administrative assistant or the equivalent. Calling someone a "Document Manager" does not shed much light on what the person's duties were.

In my opinion, Mr. Stipkala's attendance at the January 3 meeting, and his subsequent involvement in providing the documents for the follow-up meeting mean that Robocast has met its burden of showing, with respect to 3973 and 3976, that Mr. Stipkala's being copied on the emails does not waive the privilege. There is sufficient record from which I conclude that his participation was integral to the obtaining of the legal advice that was the subject of the two emails. On the other eleven, however, I do not think Robocast has met its burden. Why Mr. Stipkala was copied on the emails is a mystery.

I agree with Robocast on the "Lynn Battaglia" and "Jeff Bellin" issues. They only relate to the 3973 and 3976 decisions.

On 366, I accept that Lydia Andre worked for Robocast, and therefore the privilege is not waived just because it was sent to her at a non-work address. I am concerned, however, that most of the email is establishment of a policy (which may or may not be responsive to some discovery request, although I imagine that it is), and, while there may need to be some redaction, I do not think the entire email is privileged just because it identifies who suggested the policy.

On documents 11730 and 11732, I agree that the documents are work product and should not be produced.

Thus, the Special Master's Opinion and Order of July 30, 2013 (No. 10-1055, D.I. 255; No. 11-235, D.I. 252) is **ADOPTED IN PART AND MODIFIED IN PART.** Robocast must produce the disputed documents other than 1339, 1340, 3973, 3976, 11730, and 11732, which

are privileged, and 366, which is at least partly privileged. If the policy in 366 has been separately produced, Robocast may withhold 366. If it has not, Robocast must redact 366 and produce the policy.

Robocast has seven calendar days within which to comply with this Memorandum Order.

November 7, 2013
Date

*/s/ Richard G. Andrews*
United States District Judge