IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Robocast, Inc.,**

Plaintiff,

v.

Civil Action No. 10-1055-RGA

**Microsoft Corporation,**

Defendant.

MEMORANDUM ORDER

Before the Court is Defendant's Motion to Exclude Expert Testimony of Creighton

Hoffman (D.I. 334) and related briefing (D.I. 335, 355, 394). The Court heard oral argument

regarding this motion on January 8, 2014. Mr. Hoffman is Robocast's reasonable royalty expert.

Microsoft contends that Mr. Hoffman's testimony should be excluded because he impermissibly

applies the Nash Bargaining Solution, violates the Entire Market Value Rule, arrives at a $5

million lump sum damage for non-revenue generating instrumentalities without sound

methodology, and references certain prejudicial topics.

In his expert report, Mr. Hoffman individually discusses the *Georgia Pacific* factors and

concludes "that Robocast and Microsoft would have negotiated reasonable royalties for use of

the '451 patent in video advertising applications. The running royalty that would have resulted

from the hypothetical negotiation would effectively result in an equal sharing of the incremental

revenue and profit from the use of the patented technology." (D.I. 336-1 at 17). Mr. Hoffman

justifies this result because:

1

> Absent a license agreement between the parties, neither would share any of the incremental profits that could flow from the use of the patented technology. This includes the increased benefits from additional video advertisements as well as the increased benefits from the price premium for video advertisements in automated browsing shows. Equal participation in the incremental profits would be a reasonable outcome of the hypothetical negotiation in this case.

*Id.* Mr. Hoffman then goes on to note several considerations[1] suggesting that Microsoft would "pay more than half of the incremental profits to Robocast," but concludes "that an equal split of the benefits would be reasonable and could be negotiated by the parties to the hypothetical negotiation." *Id.*

Microsoft objects to this testimony, arguing that it is an application of the Nash Bargaining Solution, which is an impermissible rule of thumb like that struck down in *Uniloc*. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) (striking down the 25% rule of thumb as fundamentally flawed because it is not based in fact). Robocast responds that Mr. Hoffman did not apply the Nash Bargaining Solution, and, even if he did, that it is sufficiently tied to the facts. While Mr. Hoffman's report never mentioned the Nash Bargaining Solution or game theory, there is no doubt that the reasoning behind the purported 50/50 profit split is premised on these models. *See Oracle Am., Inc. v. Google, Inc.*, 798 F. Supp. 2d 1111, 1119 (N.D. Cal. 2011) (describing the Nash Bargaining Solution as an equal division of surplus profits created by cooperation). What both parties seem to agree on is that the relevant inquiry is whether the 50/50 split is sufficiently tied to the facts of the case. This accords with the reasoning in *Uniloc*, where the 25% rule was struck down as "arbitrary [and] unrelated to the facts." 632 F.3d at 1318.

---

[1] Mr. Hoffman gives four reasons for his 50/50 split being generous to Microsoft: the patented technology contributes to the generation of new revenue opportunities, webpages that include the allegedly infringing video advertisements may include non-video web advertisements, Microsoft earns substantial revenues and profits from the accused products and services, and the patent had over twelve years remaining. (D.I. 336-1 at 17).

In *Uniloc*, the Federal Circuit pointed out three criticisms of the 25% rule: that it "fails to account for the unique relationship between the patent and the accused product," that it "fails to account for the unique relationship between the parties," and that it "is essentially arbitrary and does not fit within the model of the hypothetical negotiation within which it is based." 632 F.3d at 1313. The court discussed the cases on reasonable royalties and concluded that:

> The meaning of these cases is clear: there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case. The 25 percent rule of thumb as an abstract and largely theoretical construct fails to satisfy this fundamental requirement. The rule does not say anything about a particular hypothetical negotiation or reasonable royalty involving any particular technology, industry, or party. Relying on the 25 percent rule of thumb in a reasonable royalty calculation is far more unreliable and irrelevant than reliance on parties' unrelated licenses, which we rejected in *ResQNet* and *Lucent Technologies*.

*Id.* at 1317. All of these criticisms are applicable to the Nash Bargaining Solution.

The Nash Bargaining Solution "relies on 'a few general assumptions' that 'idealize the bargaining problem.'" *Oracle*, 798 F. Supp. 2d at 1119 (citing John F. Nash, Jr., *The Bargaining Problem*, Econometrica, Apr. 1950, at 155). One of the assumptions that is required in order to arrive at a 50/50 profit split is that the parties have equal bargaining power.[2] *See* Roy Weinstein, Ken Romig & Frank Stabile, *Taming Complex Intellectual Property Compensation Problems*, 22 FED. CIR. B.J. 547, 556-557 (2012) ("Enhanced relative bargaining power based on alternatives results in an increased claim on the incremental profits created by licensing such that a 50/50 split of the benefits is not inevitable."). In fact, one of the goals of game theory modeling in this scenario "is to mathematically define the patentee's and accused infringer's relative bargaining

---

[2] Similarly, one of the assumptions underlying the 25% rule "is that the licensee should retain a majority (i.e. 75 percent) of the profits, because it has undertaken substantial development, operational and commercialization risks, contributed other technology/IP and/or brought to bear its own development, operational and commercialization contributions." *Uniloc*, 632 F.3d at 1313 (internal citation and quotation marks omitted). This assumption is arguably more realistic than the equal bargaining power assumption, and was even supported by empirical studies, yet the 25% rule was still struck down. *See id.*

power and thus the proportion of license value each would keep in a deal." John C. Jarosz &
Michael J. Chapman, *The Hypothetical Negotiation and Reasonable Royalty Damages: The Tail
Wagging the Dog*, 16 STAN. TECH. L. REV. 769, 789 (2013) (internal citation omitted); *see also
NetAirus Techs., LLC v. Apple, Inc.*, No. 10-03257, at *6 (C.D. Cal. Oct. 23, 2013) ("Game
theory uses relative bargaining power of each party to determine an appropriate royalty.") (D.I.
356-5).

While Robocast contends that Mr. Hoffman adequately tied his conclusion of a 50/50
profit split to the facts of the case, he did not discuss the relative bargaining power of Microsoft
and Robocast.[3] Without discussing the underlying assumptions, it is impossible to tie the
idealized bargaining problem to the facts of the case. *See Oracle*, 798 F. Supp. 2d at 1119 ("In
particular, Dr. Cockburn glossed over the axioms underlying the Nash solution without citing
*any* evidence to show that those assumptions were warranted in the present case. In this respect,
his analysis was not based on sufficient facts.") (emphasis in original). At least one other court
has excluded expert testimony based on game theory when the expert failed to discuss the
relative bargaining power of the parties. *See NetAirus*, No. 10-03257, at *6. Without discussing
bargaining power, the analysis "fails to account for the unique relationship between the parties."
*Uniloc*, 632 F.3d at 1313.

Mr. Hoffman's discussion of the facts specific to this case would be insufficient even if
the "relative bargaining power" issue did not exist. The four facts specific to the case provide
little or no basis for a 50/50 split. That the patented technology contributes to the generation of

---

[3] The only factor that arguably might relate to bargaining power is the remaining term of the patent, as it relates to
the availability of business alternatives. A party with viable alternatives enjoys a better bargaining position than one
without alternatives. Mr. Hoffman's conclusory opinion that awaiting the patent's expiration was not a viable
business alternative does not suffice for a meaningful analysis of relative bargaining power.

new revenue opportunities, or that the webpages that include the infringing ads may include non-video ads, or that Microsoft earns substantial revenues from the accused products/services do not provide any guidance as to the starting point of a reasonable royalty analysis. What I believe the Federal Circuit meant by "related to the facts of the case" are the sort of facts analogous to facts usually used in reasonable royalty analyses. Thus, if Microsoft had a history of licensing similar technology for a 50/50 split of the profits, or Robocast had a history of licensing the '451 patent for half of the profits, those would be the sort of facts that would provide a basis for Mr. Hoffman's calculations. As it is, while the Nash Bargaining Solution of a 50/50 split has a more prestigious academic pedigree than the 25% rule of thumb, both are non-starters in a world where damages must be tied to the facts of the case. Mr. Hoffman did not tie his reasonable royalty analysis to the facts of the case, and it is therefore excluded.[4]

Microsoft's next contention is that Mr. Hoffman's lump-sum royalty analysis should be excluded because it lacks reliable methodology and is not sufficiently grounded in fact. There seems to be some confusion about whether Mr. Hoffman actually relied on licenses he deemed were not technologically comparable. Microsoft contends that because Mr. Hoffman admitted that the licenses were not technologically comparable, they cannot serve as a basis for determining a reasonable royalty, yet points out that they provide the only quantitative reference point. (D.I. 335 at 12). In response, Robocast asserts that Mr. Hoffman relied on Microsoft's history of lump sum payments. (D.I. 355 at 12).

Mr. Hoffman cannot rely on licenses for unrelated technology in order to arrive at a lump sum royalty payment for the technology at issue. The only thing that Mr. Hoffman may glean

---

[4] Because the 50/50 split forms the basis for Mr. Hoffman's resulting running royalty analysis, this analysis is excluded. I need not reach the issue of whether the expression of that royalty violates the Entire Market Value Rule.

from Microsoft's history of licensing technology is that Microsoft was willing to license technology. What Microsoft paid for unrelated technology does not help the jury determine what Microsoft would have paid for this technology. With nothing else on which to base his opinion, Mr. Hoffman cannot testify to a lump sum royalty. Such testimony would be nothing more than *ipse dixit.*

Defendant's motion (D.I. 334) is hereby **GRANTED**.[5]

Entered this 29th day of January, 2014.

United States District Judge

---

[5] Microsoft's objections to testimony regarding prejudicial and irrelevant matters are properly dealt with at the *motion in limine* stage.