IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Robocast, Inc.,**

Plaintiff,

v.

Civil Action No. 10-1055-RGA

**Microsoft Corporation,**

Defendant.

MEMORANDUM ORDER

Before the Court is Plaintiff Robocast, Inc.'s Emergency Motion for Reconsideration of

the Court's January 29, 2014 Order (D.I. 452) and to Compel Production of Withheld Licenses

(D.I. 457) and related briefing. (D.I. 469, 477). In its January 29, 2014 order (D.I. 452), the Court

precluded the testimony of Creighton Hoffman because his damages analysis was not sufficiently

tied to the facts of the case. In reaching that conclusion, the Court stated that "if Microsoft had a

history of licensing similar technology for a 50/50 split of the profits…those would be the sort of

facts that would provide a basis for Mr. Hoffman's calculations." (D.I. 452 at 5). Robocast took

that statement to heart, found Microsoft's Application Developer Agreement ("ADA"), which

provides for a 70/30 revenue split in favor of the licensor, and is now asking for reconsideration.

While there is a high burden associated with a request for reconsideration, I need not rely

on that burden to deny Robocast's request. Simply put, the Application Developer Agreement is

not analogous to patent licenses, and would not have changed the Court's conclusion with regard

to Mr. Hoffman's testimony. The ADA is not a patent license agreement, it is a commission

agreement. The ADA states:

1

> The Windows Store is a forum through which apps are made available by
> developers to Windows users. Microsoft's role is to provide the technology and
> services to enable this forum, and to process the related purchases, returns and
> chargebacks for you. You appoint Microsoft to act as your agent or
> commissionaire, as applicable, for these purposes. If your app is designated as
> preinstallable by an OEM or other channel partner, or "channel exclusive", you
> authorize us to make your app available to the designated OEM or channel partner
> on your behalf.

(D.I. 460-9 at 3, section 3.a). Microsoft merely provides a virtual storefront for application

developers and publishers to sell their merchandise. The word "patent" does not appear in the

document, and the only mention of licensing is limited to Microsoft's rights and responsibilities

under the agreement:

> You grant to Microsoft the worldwide right to: host, install, use, reproduce,
> format, make available to customers (including through multiple tiers of
> distribution), and sign the app (including by removing preexisting signatures) all
> for purposes of exercising Microsoft's rights and responsibilities under this
> agreement, including performing certification of your app and conducting
> penetration or other testing for identification of security vulnerabilities. Microsoft
> may also evaluate your app periodically after it becomes available in the
> Windows Store, to verify that it continues to comply with this agreement and
> remains compatible with Windows. You also grant Microsoft the worldwide,
> royalty-free right to publicly perform and display, duplicate and demonstrate your
> app, pieces of your app, or associated Marks and materials, at trade shows and
> industry events, and to advertise or promote your app in any and all media.

(D.I. 460-9 at 3, section 3.b).

Robocast contends that whether the ADA is a comparable license agreement should be

left to the jury. (D.I. 477 at 3). In support of this, Robocast cites to *i4i Ltd. P'ship v. Microsoft*

*Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), where the Federal Circuit stated, "[w]hen the

methodology is sound, and the evidence relied upon sufficiently related to the case at hand,

disputes about the degree of relevance of accuracy (above this minimum threshold) may go to

the testimony's weight, but not its admissibility." I hold that the ADA is not "sufficiently related

to the case at hand," and therefore is irrelevant. In the traditional patent licensing agreement, the

2

licensee takes on risk. The licensee decides if it desires to license a patent, whether it will make money from using that patent, and weighs the risk and reward. If it decides that the upside outweighs the downside, it licenses the patent. However, in the ADA arrangement, Microsoft does not license any patents. It sells applications. There is almost no risk inherent in this arrangement. Microsoft merely charges a commission on sales in return for brokering the deal and giving the product virtual shelf space. Such "app stores" are commonplace and have no logical connection to patent licenses.

Plaintiff's motion (D.I. 457) is hereby **DENIED**.

Entered this 20th day of February, 2014.

United States District Judge

3