IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**Robocast, Inc.,**

Plaintiff,

v.

**Microsoft Corporation,**

Defendant.

Civil Action No. 10-1055-RGA

MEMORANDUM OPINION

Thomas C. Grimm, Esq., Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Richard K. Kirk, Esq., Bayard, P.A., Wilmington, DE; Steven J. Rizzi, Esq. (argued), Foley & Lardner LLP, New York, NY; Akiva M. Cohen, Esq., Foley & Lardner LLP, New York, NY; Victor de Gyarfas, Esq. (argued), Foley & Lardner LLP, Los Angeles, CA; Justin Gray, Esq., Foley & Lardner LLP, San Diego, CA, attorneys for Plaintiff.

Thomas L. Halkowski, Esq. (argued), Fish & Richardson, Wilmington, DE; Kurt L. Glitzenstein, Esq. (argued), Fish & Richardson, Boston, MA; Adam Kessel, Esq., Fish & Richardson, Boston, MA; Whitney Reichel, Esq., Fish & Richardson, Boston, MA; Jack P. Smith III, Esq., Fish & Richardson, Atlanta, GA; Frank E. Scherkenbach, Esq., Fish & Richardson, Boston, MA; attorneys for Defendant.

February 21, 2014

ANDREWS, U.S. District Judge:

Presently before the Court are Defendant Microsoft's Omnibus Motion for Summary Judgment (D.I. 298) and related briefing (D.I. 299, 365,467), and Plaintiff Robocast, Inc.'s Motion for Summary Judgment of No Unenforceability and No Unclean Hands (D.I. 295) and related briefing (D.I. 296, 360, 410). The Court has heard helpful oral argument on both motions. (D.I. 446).

## I. BACKGROUND

This is a patent infringement action. Plaintiff Robocast, Inc. has accused Defendant Microsoft Corporation of infringing U.S. Patent No. 7,155,451 ('the '451 patent"). Microsoft contends that it does not infringe the '451 patent, and that the patent is invalid and unenforceable due to inequitable conduct. Robocast opposes these contentions.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. *Celotex*, 477 U.S. at 323.

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...." FED. R. CIV. P. 56(c)(1).[1]

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–49; *see Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322.

**III. DISCUSSION**

---

[1] There is an extensive record in this case. To the extent a party does not properly oppose factual assertions, the Court considers the factual assertion to be undisputed and a basis on which to grant summary judgment. FED. R. CIV. P. 56(e)(2) & (3).

There are four arguments set forth by Microsoft. First, that Microsoft does not directly infringe and that Robocast failed to timely disclose a doctrine of equivalents theory. Second, that Microsoft does not indirectly infringe. Third, that Robocast cannot assert priority to earlier filed applications and cannot show prior invention. Fourth, that Robocast cannot show willful infringement by Microsoft. Robocast sets forth two arguments, that the patent is not unenforceable due to inequitable conduct, nor is it unenforceable due to unclean hands. The arguments will be discussed in turn.

**A. Direct Infringement of Video Playlist Functionality**

Robocast accuses seven different products of infringement, which can be grouped into two categories: video playlists and changing tiles. Products with video playlist functionality include Bing.com, MSN.com, MSNBC.com, and the Xbox 360 ESPN app.[2] Products with changing tile functionality include Windows 8 Xbox Music Software and Xbox 360 "Video" and "Home" channels. While some of the independent claims are asserted against only some products, claim 1 is illustrative:

> A method for displaying on a user's computer, content derived from a plurality of resources in an organized arrangement comprising the steps of:
> creating a show structure of nodes, each node identifying a resource from a plurality of accessible resources;
> without requiring user input, automatically accessing a plurality of said resources each of said resources identified by each of said nodes; and
> displaying a content corresponding to each of said resources automatically in accordance with said show structure, wherein said step of creating further comprises the step of providing an interactively variable duration information, representing the duration within which a corresponding content to said resource is being displayed so as to enable a user to vary said duration.

[2] Robocast no longer alleges infringement for Xbox 360 "Suggest a movie." (D.I. 365 at 6).

'451 patent claim 1. Claim 37 is drawn to a "multidimensional show structure of nodes." Claims 22 and 39 require that the "show structure is created in response to said search results received in response to said on-line search."

1. A Reasonable Jury Could Find That "Each" Resource Is Displayed

Microsoft's initial argument is that Robocast has not adduced evidence showing that the video playlist functionalities display, access, or retrieve "each" resource or content of a show structure. Essentially, the argument is that because the claims require "displaying a content corresponding to each of said resources," *see* claims 1 and 37, the claim cannot be infringed until every video is played. Robocast responds that implicit in this argument is the assumption that the entire playlist is a "show structure of nodes." Robocast contends that a portion of the playlist meets the "show structure of nodes" limitation, and therefore as long as that portion of the playlist is displayed, then the limitation is met. Alternatively, Robocast argues that the "each of said resources" in the "displaying" step refers not to each of said resources present in the show structure, but to "a plurality of resources" accessed in the previous step.

Microsoft's non-infringement theory would result in a preposterous conclusion. Following Microsoft's logic, infringement could only be found after the last video in the show structure finished playing, or at least when the last video started playing. If the show structure were infinite, then there could never be infringement. The claimed methods do not require that every resource be "displayed."[3] A reasonable jury could find that where there is more than one node, a show structure is present.

[3] The same logic applies to "accessed" and "retrieved."

Microsoft also argues that infringement only occurs when the user views each video, and that Robocast cannot meet this evidentiary burden. Yet the claims do not require "viewing," they require "displaying." As long as the accused functionality can play more than one node, then infringement could be found. Whether someone views the content is not required by the claims and therefore irrelevant.

2. A Reasonable Jury Could Find That The Durational Requirement Is Met

During claim construction, the Court construed "show structure of nodes" as "a structure that is arranged for the display of content by specifying one or more paths through a plurality of nodes." The Court further required that the "show structure of nodes specifies the duration of any display." (D.I. 246 at 2). Additionally, the Court construed "node" as "an identifier of a resource that includes an address to the resource and the duration for which the resource's content is to be presented by default." (D.I. 246 at 16). As an initial matter, Robocast is correct in asserting that the Court did not intend to include a separate durational requirement in the term "show structure of nodes" separate from the construction of "node." The node itself sets the duration, and the show structure is made up of multiple nodes and a pathway through those nodes.

Microsoft argues that because the show structure of nodes "specifies the duration of any display," the show structure of nodes must have a causal relationship on the duration parameter. Specifically, because the video clips themselves contain duration parameters, the show structure cannot specify the duration, because the person who made the video specified the duration. However, at some point the video player must know when to move on to the next video. There must be some sort of durational information which alerts it to queue up the next video and start playing. While this durational information is determined by the creator of the content, it is

nevertheless durational information. The Court cannot say as a matter of law that the accused video playlist functionality does not contain the required durational information.

Microsoft has asked that the Court construe its construction of "specify," presumably to require its proposed causal relationship. The Court has no obligation to further construe its constructions,[4] and declines to engage in such circular endeavors.

3. A Reasonable Jury Could Find That A Scrubber Bar Meets The Limitation Of Interactively Variable Duration Information

Claim 1 requires "interactively variable duration information," which has been construed as "a parameter specifying how long a content is to be displayed by default before a subsequent content is displayed, where the viewer of the content can change the parameter." (D.I. 246 at 22). Robocast contends that the "scrubber bar," which allows a user to select a particular point in a video, meets this limitation. Microsoft sets forth numerous arguments for why the accused products do not meet this limitation. Underpinning all these arguments is Microsoft's contention that there can only be one duration parameter, and that a user cannot vary any duration parameter in the show structure. (D.I. 467 at 6). However, this assumption is not necessarily true. There is a requirement of duration information associated with each node. Claim 1 separately refers to "interactively variable duration information" as a distinct limitation apart from the nodes themselves. A jury could find that changing the position of the scrubber bar changes the duration information present in the video, as it is the length of the video which satisfies the durational requirement.

As for the specific arguments, Microsoft points out three reasons for why the distance between the position of the scrubber and the end of the playback line cannot be interactively

---

[4] The Court notes that Microsoft proposed the use of "specify." (D.I. 137 at 21).

variable duration information. First, that the distance is not a "parameter," because a parameter is a "variable that must be given a specific value." (D.I. 246 at 23). Second, that Robocast has not alleged that the scrubber bar is provided contemporaneously with the creation of the show structure. Third, that Robocast does not explain how the distance corresponds to the default duration for the video.

The distance of the scrubber bar may be a "parameter." The distance has a numerical component, which is a specific value. That the numerical component changes as the video plays back does not change the fact that at a particular point, there is a specific value associated with the distance of the scrubber bar. As for Microsoft's second argument, the fact that the scrubber bar does not appear until video playback does not mean that the "interactively variable duration information" is not "provided" contemporaneously with the creation of the show structure. The length of the video may be the "interactively variable duration information." That it is not variable prior to playback does not mean it is not variable at a later stage. As for Microsoft's third argument, the position of the scrubber bar corresponds to the default duration when playback is started.

Microsoft also argues that Robocast cannot put forth a doctrine of equivalents argument with regard to this limitation, both because it would be untimely and because it is estopped by the prosecution history. As for the timeliness argument, Robocast's doctrine of equivalents arguments are based on the Court's claim construction rulings, and Microsoft was on notice. As for the prosecution history estoppel issue, it appears that the "interactively variable duration information" was added in order to differentiate the claimed invention from the prior art. Therefore, this limitation must be present in any infringing product. It is unclear how the

doctrine of equivalents would allow Robocast to prove infringement without proving that the accused products contain some sort of "interactively variable duration information." In any case, proving infringement under the doctrine of equivalents is a question of fact, and is therefore best left to the jury. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009).

4. Bing.com and MSN.com Do Not Infringe Claims 22 and 39

Claims 22 and 39 require the step of "automatically creating and storing a show structure of nodes... in response to said search results received in response to said online search." While Robocast argues that the claims do not require a particular order of method steps, this limitation would be nonsensical without a particular order. The claim requires that a show structure is made "in response" to search results, which are themselves received "in response" to an online search. Something cannot be "in response" to something that has yet to occur. Claims 22 and 39 therefore require that the show structure be created after a search has returned search results.

Microsoft's non-infringement argument is that Bing.com and MSN.com do not create the show structure after a search is performed, but that show structures which have been previously created are displayed in response to the search. In the case of Bing.com and MSN.com Entertainment, when a user performs a search, the search results are presented as thumbnails. (D.I. 301 at 10-11). While Robocast disputes this, *see* D.I. 365 at 19, it is clear that the search results display static images. (D.I. 376 Ex. 4 and 5). When a user clicks on one of the thumbnails, the video is played. *See id.* Static images cannot form a show structure, because a show structure requires durational information. Static images have an infinite duration, and cannot be nodes.

Without nodes, there is no show structure. Accordingly, for a show structure to be created in response to a search, there must be something else that is the show structure.

Robocast appears to argue that because videos are played after clicking on a thumbnail, the videos that are played form the show structure. This argument fails for at least two reasons. For Bing.com and MSN.com Entertainment, an algorithm identifies related videos. The video playlist is not created in response to the search, but has been previously created. (D.I. 301 at 4, 11). For these types of functionalities, the show structure is not created in response to the search results. Therefore, accused products of this type do not infringe claims 22 or 39.[5]

In the case of MSN "Movie Trailers," a search returns thumbnail images of movie posters. (D.I. 376 Ex. 4). After clicking on one of the thumbnails, a trailer corresponding to that movie is played. *Id.* Afterwards, a trailer corresponding to the next movie is played. *Id.* While this might meet the limitation requiring that a show structure be created in response to search results, it does not infringe for another reason.[6] The claims also require, "without requiring user input accessing each of said resources identified by each of said nodes." (Claims 22 and 39). The MSN "Movie Trailers" do not play without a user clicking on the poster thumbnail. (D.I. 376 Ex. 4). Therefore, MSN "Movie Trailers" does not infringe claims 22 or 39.[7]

**B. Direct Infringement of Changing Tile Functionality**

The second category of accused products is changing tile functionality. These products contain two groups, the first being the Xbox 360 "Home" and "Video" channels, and the second being the Xbox Music software. Many of the non-infringement arguments for these products are

[5] Thus, they do not infringe dependent claims 23-28.
[6] This reasoning also applies to the Bing.com and MSN.com Entertainment functionalities.
[7] They also do not infringe dependent claims 23-28.

the same as for the first category, and are dealt with above.[8] Microsoft makes three arguments in regard to this category of products. The first is that the products cannot infringe because they use a global duration, which negates the requirement of a node containing duration information. The second is that the Xbox 360 channels cannot infringe because only one tile is dynamic, and because the static tiles are not nodes, there cannot be a multidimensional show structure. The third is that Xbox Music software cannot infringe because successive images are determined randomly, and therefore there cannot be a path through the nodes.

1. A Reasonable Jury Could Find That a Node May Have a Global Duration

All of the accused changing tile products contain a global duration. (D.I. 301 at 25, 27-28). Duration is not set on a per-resource basis. Because the Court's claim construction requires that a node include both an address and a durational element, a global durational element separate from the node cannot be a substitute for the durational element that must be part of a node. However, the concept of node is an elusive one. By their very definition, nodes contain multiple parts. Where those parts are stored is not necessarily dispositive of whether the node exists. The Court cannot say as a matter of law that the existence of a global durational value means that the tile products do not contain nodes with the required durational element.

Of course, given the Court's claim construction, a doctrine of equivalents argument might be available as an alternative to literal infringement, i.e., that a global duration is the equivalent of a node with a per resource duration. Microsoft argues that Robocast has not advanced a doctrine of equivalents theory with respect to the Xbox 360 Home and Video channels. (D.I. 299 at 29).[9] As for Xbox Music, Microsoft argues that the all-elements rule precludes Robocast from

---

[8] For instance, the necessity for "each" resource to be displayed and the timeliness of the doctrine of equivalents.
[9] Given Robocast does not dispute this, I accept it as accurate.

arguing the doctrine of equivalents because it would "vitiate a particular claim element." (D.I. 299 at 29). This argument falls short. The specification itself contemplates a global value. ('451 patent 15:14-17). The Court does not see how an equivalents theory which results in something which the specification itself contemplated would "vitiate" a claim element.

2. The Accused Xbox 360 "Home" and "Video" Channels Do Not Have a "Multidimensional" Show Structure of Nodes

The Xbox 360 Home and Video Channels only display one tile which changes over time. The remaining tiles are static. (D.I. 301 at 27). Microsoft argues that static tiles cannot be nodes because they do not contain duration information, and therefore there cannot be a "multidimensional" show structure of nodes, because there is only one node present. This argument is persuasive. Static images have no duration, and therefore they cannot be nodes. With only one node, the show structure cannot be multidimensional.

Robocast argues that because the last node in a path may be infinite, that some nodes need not contain duration information. The fact that the patent contemplated displaying content that is not a node does not negate the durational requirement of node. The claims need not be coextensive with every embodiment in the specification. A static image is not a node, and cannot form the basis for a "multidimensional show structure of nodes." Because these accused functionalities do not contain a "multidimensional show structure of nodes," they cannot infringe claim 37. Summary judgment for Microsoft on the Xbox 360 "Home" and "Video" channels is granted.

3. A Reasonable Jury Could Find That Xbox Music Contains a Path

The accused Xbox Music software displays successive images randomly. The particular image is not selected until just before the image transitions. Microsoft argues that because of this

the software does not contain a show structure "specifying one or more paths through a plurality of nodes." This is not persuasive. Again Robocast argues that the asserted method claims do not require a particular order of the steps, but here the argument holds weight. The entire show structure need not be created before any of it can be displayed. The path can be continually updated and changed during the step of displaying the nodes.

**C. Indirect Infringement**

Microsoft contends that Robocast's infringement theories are largely relegated to induced and contributory infringement, because Microsoft does not perform all of the steps of the claimed methods. (D.I. 299 at 33). Direct infringement of a method claim generally requires that one entity performs all of the steps, although direct infringement can also be found when some of the steps are performed by someone "acting pursuant to the accused infringer's direction or control." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) *cert. granted*, 134 S. Ct. 895 (U.S. Jan. 10, 2014) (No. 12-786); *see also BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007). Microsoft, however, has not moved for summary judgment on this issue, and I therefore limit my analysis to induced and contributory infringement.[10]

1. A Reasonable Jury Could Find Microsoft Liable For Contributory Infringement

Microsoft makes two arguments against a finding of contributory infringement. The first is that Robocast cannot show that the accused functionalities are not capable of "substantial

[10] Microsoft contends that there can be no liability for indirect infringement prior to the date this suit was filed, because Microsoft was not aware of the '451 patent. Robocast does not appear to contest this issue, pointing out that Microsoft would still be liable after initiation of the suit. (D.I. 365 at 34). Thus, it is the Court's understanding that indirect infringement liability and damages do not exist before this lawsuit was filed in December 2010.

noninfringing use," and the second is that the accused functionalities are not a "component," "material," or "apparatus" as required by 35 U.S.C. § 271(c). As for whether Robocast has met its burden of showing that the accused functionalities have no substantial non-infringing use, this is a factual question reserved to the jury. Robocast does not need to survey users in order for the jury to determine that there are not a substantial number of users who only watch one video. As for the arguments regarding the changing tile functionality, the fact that the accused functionality is aesthetic does not preclude a finding of infringement.

Microsoft's second argument is a much closer issue. Microsoft contends that the accused functionalities are intangible, and because § 271(c) predicates liability on the sale of tangible things, there can be no contributory infringement. In support of this proposition, Microsoft cites to *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 447-52 (2007), where the Supreme Court held that disembodied software code did not constitute a component under § 271(f). Microsoft also cites to a district court case where the court extended the logic of *AT&T* and concluded that electronically published software is not a material or apparatus under § 271(c). *See Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1275 (W.D. Wash. 2008).

This argument fails for two reasons. The first is that it is illogical. The Supreme Court drew a distinction between intangible software in the abstract and software on some medium, drawing an analogy to the notes of Beethoven's Ninth Symphony versus a copy of the sheet music. *AT&T*, 550 U.S. at 447-48. While the *Veritas* court assumed that electronically published software was the same as purchasing the notes, such purchases require a transfer between electronic media. The notes are written in one location, purchased, and written on the purchaser's desired location. To differentiate between copying between two computers and physically

sending a disk, which is itself a copy, is not persuasive. The second is that the Federal Circuit rejected this very argument in *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321 (Fed. Cir. 2009), stating, "We need only respond that the Supreme Court in *Microsoft* did not address the meaning of 'material or apparatus' in § 271(c)."

2. A Reasonable Jury Could Find Microsoft Liable For Induced Infringement

Microsoft contends that because a good faith belief of non-infringement or invalidity can preclude a finding of induced infringement, it is entitled to summary judgment on this issue. Robocast replies that it need only proffer evidence that Microsoft knew of the '451 patent and instructed its customers to use the accused products in an infringing manner. This is a quintessential jury question.

**D. Priority and Prior Invention**

The '451 patent claims priority to a parent application, number 08/922,063, filed on September 2, 1997, as well as a provisional application, number 60/025,360, filed on September 3, 1996. During prosecution of the '451 patent, the inventor asked the Examiner to make a priority finding for claim 1. The Examiner made the desired finding, establishing a priority date of September 3, 1996. Additionally, Robocast asserts that it is entitled to an earlier invention date. In order to establish an earlier date, Robocast relies on inventor testimony, as corroborated by a notebook entry dated January 4, 1995 and a letter dated June 14, 1996.[11]

1. A Reasonable Jury Could Find That Robocast is Entitled to Claim Priority

In order to establish priority to previously filed applications, "each application in the chain leading back to the earlier application must comply with the written description

[11] Microsoft disputes the authenticity of these documents. (D.I. 299 at 40 n. 16).

requirement of 35 U.S.C. § 112." *Lockwood v. American Airlines, Inc.*, 107 F.3d 1465, 1571 (Fed. Cir. 1997). The test for sufficiency of written description is "whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010). Additionally, "claims are awarded priority on a claim-by-claim basis." *Lucent Technologies, Inc. v. Gateway, Inc.*, 543 F.3d 710, 718 (Fed. Cir. 2008) (internal citations omitted).

Microsoft contends that the earlier filed applications do not provide written description support for the limitation "show structure of nodes," because the Court construed this term to require "one or more" paths through a plurality of nodes, and the earlier applications only disclose one path. Robocast makes four arguments in response. First, that Microsoft cannot challenge priority without first putting forth a *prima facie* case of invalidity. Second, that the Patent Office has already determined that the "show structure" limitation is supported by the earlier-filed applications. Third, that Microsoft applies the wrong test for written description. Fourth, that there is a genuine issue of material fact as to whether the earlier-filed applications give support for the "show structure" limitation.

I agree that there is a genuine issue of material fact that precludes a finding of summary judgment on this issue. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) ("Whether a specification complies with the written description requirement... is a question of fact."). I assume for the sake of argument that Microsoft has set forth a *prima facie* case of invalidity. As to whether the Patent Office has already determined that the "show structure" limitation is supported by the earlier-filed applications, I agree with Robocast that the

PTO made that determination. While priority determinations are made on a claim by claim basis, the limitation at issue was present in claim 1, for which priority was granted. As for the fact that the Examiner did not have the Court's claim construction when making the priority determination, I note that the specification states that "[a] show structure is defined by one or more paths that are spanned through these nodes." ('451 patent at 3:4-6).

As for the dispute regarding the correct test for written description, I see very little difference between the parties' proposed tests. Both sides cite to *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010), yet Robocast emphasizes that the written description requirement does not require literal disclosure. I agree. The test is what a person of ordinary skill in the art would understand to be in the inventor's possession. *Id.*

This dispute is further complicated by the fact that the term "show structure of nodes" was not present in either of the earlier filed applications. Microsoft does not appear to argue that the previous applications fail to provide support for a show structure corresponding to a single path, only that they fail to provide support for a multiple path show structure. There are disputed factual issues, and, at this juncture, the Court cannot rule in Microsoft's favor. First, Robocast's expert offered his opinion that a disclosure of two open windows was consistent with a multiple path show structure of nodes. (D.I. 365 citing Almeroth Report ¶ 187). Second, it is possible that a disclosure of a single path was sufficient to convey to those skilled in the art that the inventor had possession of a multiple path embodiment. Lastly, the patent differentiates between "show structures" and "multidimensional show structures." ('451 patent claims 1 and 37). It is certainly conceivable that multiple path show structures are limited to "multidimensional" show structures, such that the claims containing single dimension show structures have priority and the

claims containing multidimensional show structures do not have priority. These issues will be decided by the jury.

2. A Reasonable Jury Could Find That Robocast Has Shown Prior Invention

A patentee may establish a date of invention prior to the filing date by showing an earlier conception and diligence through to the patent filing date. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). Microsoft contends that Robocast cannot show a date of prior invention because the corroborating documents do not disclose multiple path show structures of nodes and because there is insufficient evidence of diligence.

As for whether the corroborating documents disclose a multiple path show structure, I previously stated that the "real issue is whether the corroborating documents provide enough evidence for the jury to believe [inventor] testimony, not whether the documents themselves are enabling disclosures." (D.I. 432). I therefore leave it to the jury to decide whether Mr. Torres was in possession of the claimed invention prior to the filing date. As for diligence, "[t]he question of reasonable diligence is one of fact." *Brown v. Barbacid*, 436 F.3d 1376, 1379 (Fed. Cir. 2006). Microsoft's arguments are thin and sufficiently contested by Robocast to make this a factual dispute for the jury.

**E. Willful Infringement**

In order to show willful infringement, "a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc). *Seagate* sets forth a two part test with both an objective and subjective component. "If this threshold objective standard is satisfied, the patentee must also demonstrate that this

objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id.* *Seagate* left open the application of this standard. *Id.* However, in *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1007 (Fed. Cir. 2012), the court held "that the objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to de novo review."

The parties spend much of their briefing debating whether Robocast can make a showing of pre-suit willfulness. Microsoft cites to *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985), which describes the requisite knowledge for a finding of willful infringement:

> To willfully infringe a patent, the patent must exist and one must have knowledge of it. A "patent pending" notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed. Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents. What the scope of claims in patents that do issue will be is something totally unforeseeable.

In response, Robocast points to the numerous communications between Mr. Torres and Microsoft from 1996 to 2001 for the proposition that "a jury could reasonably conclude that Microsoft should have undertaken affirmative investigation of its potential infringement of Robocast's patents." (D.I. 365 at 50). Robocast cites to *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 698 (Fed. Cir. 2008), where the Federal Circuit endorsed jury instructions allowing the jury to consider whether the defendant sought a legal opinion as one factor in the willful infringement determination. *Broadcom*, however, is inapposite as the defendant had knowledge of the patents. 543 F.3d at 697 ("Qualcomm contends that it did not obtain non-infringement opinions because it had procured invalidity opinions for each relevant patent.").

There appears to be no controlling case law for the proposition that Microsoft was obligated to have undertaken an affirmative investigation to determine if Mr. Torres' application had matured into a patent. In fact, in *Seagate* the court reemphasized "that there is no affirmative obligation to obtain opinion of counsel." 497 F.3d at 1371. It seems contrary to waive the requirement for a non-infringement opinion when the defendant has knowledge of the patent and yet require a defendant to undertake a search to see if a patent existed in the first place.

While neither side cites to it, *Tomita Technologies USA, LLC v. Nintendo Co., Ltd.*, 2012 WL 2524770 (S.D.N.Y. June 26, 2012), presents an interesting contrast. There, an inventor demonstrated his invention to a group of Nintendo employees and told them that he had applied for a patent in Japan and under the PCT. *Id.* at *8. Those same employees helped to develop the Nintendo 3DS, which was the very product accused of infringement. *Id.* at *10. Furthermore, there was evidence that Nintendo "from time to time" conducted patent clearance searches before introducing a product. *Id.* The court held that requiring actual knowledge of the patent at issue would "allow even copiers to shelter themselves from liability for willfulness merely by avoiding confirmation of what they, in essence, already knew." *Id.*

Here, however, the record evidence does not rise to such a level. The only interactions between Robocast and Microsoft that could possibly form a basis for a finding of pre-suit willfulness are the discussions between Mr. Torres and Microsoft employees involving the evaluation of Robocast's technology. However, none of the interactions mentioned in the briefs would support a finding of willfullness. The fact that Mr. Torres met with MSNBC and now accuses the MSNBC.com website is merely coincidental. The meeting with MSNBC that Robocast points to was limited to asking permission to use MSNBC content in a Robocast

demonstration. (D.I. 367-2 at 21). During oral argument, Robocast mentioned that there was evidence that Mr. Torres had sent a letter to Microsoft that identified the patent application number, that the accused playlist functionality was copied from the patent, that the people Mr. Torres met with at Microsoft were responsible for the accused functionality, and that these people were notified that clear embodiments from the patent had found their way into Microsoft's product. (D.I. 435 at 44). Because the briefs did not mention these allegations in detail, the Court asked for a letter pointing out where in the record support for these allegations could be found. While Robocast submitted such a letter, it did not offer sufficient support for these allegations.

The letter which Robocast submitted ended with the conclusion that the "evidence clearly demonstrates that: (1) Microsoft had significant exposure to and knowledge of Robocast's technology; and (2) Robocast had alerted Microsoft on multiple occasions to the pendency of Robocast's patent." (D.I. 435 at 10). As discussed earlier, even if Microsoft knew the patent application number, it would not form a basis for a finding of willfulness. As to the first assertion, this proves the point. Microsoft had exposure to Robocast's *technology*. Yet there is no evidence in the record that Microsoft used the specific technology which Robocast demonstrated. If, as in *Tomita*, Microsoft had copied the identical technology, then it might for a basis for a finding of willfulness. Here, the accused video playlists are entirely distinct from the web page slideshows which were demonstrated to Microsoft. Just because Microsoft was shown one embodiment does not put them on notice to investigate if distinct technologies might read on the patent which later issued from a demonstration of one particular embodiment.

As for post-suit willfulness, I note that:

> [I]n ordinary circumstances, willfulness will depend on an infringer's prelitigation conduct. It is certainly true that patent infringement is an ongoing offense that can

> continue after litigation has commenced. However, when a complaint is filed, a patentee must have a good faith basis for alleging willful infringement. So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct. By contrast, when an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct. Similarly, if a patentee attempts to secure injunctive relief but fails, it is likely the infringement did not rise to the level of recklessness.

*Seagate*, 497 F.3d at 1374 (citations omitted). Robocast did not move for a preliminary injunction. Microsoft's defenses are reasonable. *See Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010) (holding that the objective prong of willfulness was not met where a defendant's defenses were reasonable). Allowing a finding of willfulness based on post-suit conduct would put enhanced damages at issue whenever a defendant opted to deny infringement and take the case to trial. *See LML Holdings, Inc. v. Pacific Coast Distributing Inc.*, 2012 WL 1965878, *5 (N.D. Cal. May 30, 2012). Allegations of willfulness based solely on conduct post-dating the filing of the original complaint are insufficient. The conduct before suit was filed does not create a triable issue as to willfulness; the filing of the suit does not change "non-willfulness" into willfulness.

**F. Inequitable Conduct**

Microsoft proposes two theories for why the '451 patent is unenforceable, both of which rely on the same set of facts. The first is that the '451 patent is unenforceable due to inequitable conduct. The second is that the '451 patent is unenforceable due to unclean hands arising from litigation conduct. Robocast contends that both of these theories fail as a matter of law. A brief factual background is in order.

For the purposes of deciding this issue I take as true the following allegations.[12] The inventor filed provisional application number 60/025,360 ("the provisional") on September 3, 1996. The inventor filed application number 08/922,063 ("the '063 application") on September 2, 1997, claiming priority to the provisional. The inventor filed application number 09/144,906 ("the '906 application") on September 1, 1998, claiming priority to both the provisional and the '063 application as a continuation in part. The inventor prosecuted both non-provisional applications.

In November of 1999, in response to a rejection of the '063 application over *Richardson* in view of *Davis*, the inventor, Mr. Torres, submitted a false declaration to the PTO attempting to swear behind the *Richardson* reference. The Examiner did not find the declaration persuasive, and continued to reject the claims of the '063 application, but in reliance on other references. The '063 application was subsequently abandoned in January 2002. The *Richardson* reference was disclosed, *see* PTO-1449 dated December 23, 1999, and overcome during prosecution of the '451 patent without any reliance on the false declaration. The '906 application eventually issued as the '451 patent on December 26, 2006.

Microsoft contends that the inequitable conduct in the parent application in November 1999 renders the child unenforceable, even though the inequitable conduct occurred after the child application was filed in 1998. I assume that the conduct indeed was material and would have caused the '063 application to be unenforceable. Microsoft relies on the "doctrine of infectious unenforceability"[13] for the contention that the '451 patent is also unenforceable. *See*

---

[12] Robocast of course does not concede that there was any inequitable conduct.

[13] District Courts refer to the "doctrine of infectious unenforceability." To date, the Federal Circuit has not adopted that moniker as its own.

*Agfa Corp. v. Creo Products Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (explaining that infectious unenforceability occurs when inequitable conduct renders unenforceable claims in a related application).

The law of inequitable conduct grew out of the unclean hands doctrine, and "is no more than the unclean hands doctrine applied to particular conduct before the PTO." *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 812 (Fed. Cir. 1990). The unclean hands doctrine applies where:

> [S]ome unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation. [Courts] do not close their doors because of plaintiff's misconduct, whatever its character, that has no relation to anything involved in the suit, but only for such violations of conscience as in some measure affect the equitable relations between the parties in respect of something brought before the court for adjudication. They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice. They are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.

*Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245-46 (1933). In the context of inequitable conduct before the Patent Office, that conduct "renders unenforceable all patent claims having an immediate and necessary relation to that conduct, regardless of whether the claims are contained in a single patent or a series of related patents." *Truth Hardware Corp. v. Ashland Products, Inc.*, 2003 WL 22005839, at *1 (D. Del. Aug. 19, 2003).

Indeed, the Federal Circuit recognizes that "inequitable conduct early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application." *Agfa*, 451 F.3d at 1379. Of course, later applications are "not always tainted by the inequitable conduct of earlier applications." *Id.* For instance, in *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998), the court distinguished divisional applications, noting that:

> [W]here the claims are subsequently separated from those tainted by inequitable conduct through a divisional application, and where the issued claims have no relation to the omitted prior art, the patent issued from the divisional application will not also be unenforceable due to inequitable conduct committed in the parent application.

*Id.* at 1332. There are two ways to look at the distinction drawn in *Baxter.* The first is that the omitted art itself was not material to the claims in the divisional, and therefore the inequitable conduct did not infect the divisional. This is merely another way of saying that the conduct itself did not constitute inequitable conduct in the divisional. Requiring that the inequitable conduct itself have a causal effect on the issuance of the claims at issue would render the doctrine of infectious unenforceability inapplicable in the present case, since they were on a separate track before the inequitable conduct occurred.

The second way to approach the *Baxter* case, and the way I approach it, is that inequitable conduct infects the invention itself, and all claims which form a part of that invention. A divisional application is drawn to a different invention, and different inventions do not share an "immediate and necessary" relation to each other. Continuation applications, however, relate to the same invention. If a patentee who has engaged in inequitable conduct included the invention in one application, all the claims would be unenforceable. If the same patentee split the claims into two applications, why should the result be any different? To hold otherwise would fly in the face of the rule that inequitable conduct renders all claims unenforceable, "not just the particular claims to which the inequitable conduct is directly connected." *J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc.*, 747 F.2d 1553, 1561 (Fed. Cir. 1984); *see also In re Clark*, 522 F.2d 623, 626 (CCPA 1975) ("[Inequitable conduct] goes to the patent right as a whole, independently of particular claims".).

In its brief, Microsoft argues that because the claims in the '451 patent are similar to those in the '063 application, the entire '451 patent can be held unenforceable by inequitable conduct during the prosecution of the '063 application. I need not decide that issue at this point. It appears that at a minimum some claims in the '451 patent indeed could have been included in the '063 application. If that is the case, then at the very least those claims could be unenforceable. The extent to which the inequitable conduct in the '063 application actually infects the '451 patent is best left for trial, where the facts can be more clearly developed.

While the exact contours of any infectious unenforceability lack clarity, the issue of unclean hands is much clearer. Microsoft alleges that Mr. Torres fabricated evidence. If Robocast relies on that evidence to obtain an earlier date of conception, knowing that it is fabricated, that can form the basis for litigation misconduct. *See Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1372 (Fed. Cir. 2001) ("affirming dismissal based on unclean hands where patentee submitted fabricated evidence in discovery to support earlier invention date); *Intamin, Ltd. v. Magnetar Technologies Corp.*, 623 F. Supp. 2d 1055, 1076 (C.D. Ca. 2009) (dismissing suit under unclean hands doctrine based on forged assignment documents). The fact that the documents might have been forged before the start of litigation is irrelevant. It is the reliance on forged documents that would be misconduct.

## IV. CONCLUSION

For the reasons above, Microsoft's Omnibus Motion for Summary Judgment (D.I. 298) is granted in part and denied in part. Plaintiff Robocast, Inc.'s Motion for Summary Judgment of No Unenforceability and No Unclean Hands (D.I. 295) is denied. An appropriate order will be entered.